**KIMCO LEASING, INC., Petitioner,**

v.

**STATE BOARD OF TAX COMMISSIONERS,**
Respondent.

No. 49T10–9111–TA–00056.

Tax Court of Indiana.

Oct. 15, 1993.

Robert Owen Vegeler, Beers, Mallers, Backs & Salin, Fort Wayne, for petitioner.

Pamela Carter, Atty. Gen., Marilyn S. Meighen, Deputy Atty. Gen., Indianapolis, for respondent.

FISHER, Judge.

The Petitioner, Kimco Leasing, Inc. (Kimco), appeals the final determination of the Respondent, the State Board of Tax Commissioners (the State Board), assessing Kimco's business personal property for the year 1990.

## ISSUE

Kimco raises several issues, which the court consolidates as:

Whether the State Board properly assessed the 1990 business personal property tax against Kimco.

## FACTS

Kimco, an Indiana corporation with its principal place of business in Fort Wayne, is in the business of third-party commercial equipment leasing. A typical Kimco transaction for the March 1990 assessment period is a $5,000, thirty-six month lease. Throughout the lease term, Kimco retains legal title, while the lessee retains sole possession and control of the equipment. The lease provides that the lessee is responsible for payment of personal property tax, the risk of loss, any maintenance and repair, and insurance for the equipment. The lessee is not to move or encumber the equipment from its address of record without obtaining Kimco's prior written consent. Kimco's leases are irrevocable. In the case of default, however, Kimco has the right to repossess and make the entire lease agreement due and payable. Each lease contains a purchase option, under which the lessee pays a security deposit of 10 percent of the lease price at the beginning of the lease term. The option is subject only to avoidance by Kimco for nonpayment. At the termination of the lease, legal title is automatically transferred to the lessee, unless the lessee affirmatively demands return of the security deposit. The majority of the lessees exercise the purchase option; fewer than thirty out of approximately 6,500 of the lessees decline the purchase option.

The State Board held an administrative hearing on September 4, 1991, and on September 30, 1991, issued its final determination assessing business personal property tax under IND.CODE 6–1.1–2–4 on the basis of Kimco's ownership of certain leased property. Kimco appeals. Additional facts will be supplied as necessary.

## DISCUSSION AND DECISION

■ The State Board is accorded great deference when acting within the scope of its authority. *Wirth v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 613 N.E.2d 874, 876 (citing *Centrium Group v. State Bd. of Tax Comm'rs* (1992), Ind.Tax, 599 N.E.2d 242, 243). The court's function is to determine whether the State Board's action "is supported by substantial evidence, is an abuse of discretion, is arbitrary or capricious, or is in excess of the State Board's authority." *Monarch Steel Co., Inc. v. State Bd. of Tax Comm'rs* (1993), Ind.Tax, 611 N.E.2d 708, 711 (quoting *Lakeview Country Club v. State of Indiana Bd. of Tax Comm'rs* (1991), Ind.Tax, 565 N.E.2d 392, 394). The taxpayer, like any other party appealing an administrative decision, bears the burden to show the State Board's assessment is inaccurate. *Meridian Hills Country Club v. State Bd. of Tax Comm'rs* (1987), Ind.Tax, 512 N.E.2d 911, 913. To determine whether Kimco was properly assessed with business personal property tax on the leased equipment, the court must address first, whether Kimco is the owner of the leased equipment and, if so, whether it is liable for tax on property not in its possession.

### A. OWNERSHIP OF THE LEASED EQUIPMENT

■ "The owner of any tangible property on the assessment date of a year is liable for the taxes imposed for that year on the property." IND.CODE 6–1.1–2–4(a). Notwithstanding its retention of legal title, Kimco contends that it is not the owner and that the lease agreements are in substance financing transactions intended as security for debts. IND.CODE 6–1.1–1–9 provides the applicable definitions of "owner."

(b) Except as otherwise provided in this section, the holder of the legal title to personal property, or the legal title in fee to real property, is the owner of that property.

. . . . .

(e) When personal property is security for a debt and the debtor is in possession of the property, the debtor is the owner of that property.

IC 6–1.1–1–9. *See also* 50 IAC 4.2–2–4. Whether a lease is in substance a financing transaction rather than a lease involves a factual inquiry into several transactional facts. The facts of each case must be examined individually in order to determine

whether a lease is intended for security; however, the statute gives only the option to purchase as an example of what facts may be relevant. IND.CODE 26–1–1–201(37)[1]; *United Leaseshares, Inc. v. Citizens Bank & Trust Co.* (1984), Ind.App., 470 N.E.2d 1383, 1387 (citing *Matter of Marhoefer Packing Co., Inc.* (7th Cir.1982), 674 F.2d 1139, 1145).

■ The court's initial inquiry is whether the lessee may obtain the property through a purchase option for nominal consideration. Nominal consideration is defined in relation to the fair market value of the property at the time the purchase option is exercised. *See Marhoefer Packing Co.*, 674 F.2d at 1144. If the lease provides a purchase option allowing the lessee to purchase the property for no additional consideration, or for nominal consideration, the lease is a security agreement, as a matter of law. *McEntire v. Indiana Nat'l Bank* (1984), Ind.App., 471 N.E.2d 1216, 1221 (citing *Bolen v. Mid–Continent Refrigerator Co.* (1980), Ind.App., 411 N.E.2d 1255). Nominal consideration exists when the option price is insubstantial in relation to the fair market value of the leased equipment at the time the option arises and when the price is nominal in absolute terms. *Morris v. Lyons Capitol Resources, Inc.* (1987), 510 N.E.2d 221, 223 (citing *Marhoefer Packing Co.*, 674 F.2d at 1144). When the lessee's only sensible course of action at the end of the lease is to exercise the purchase option and become the owner of the goods, the lease becomes one intended for a security agreement. *United Leaseshares*, 470 N.E.2d at 1387 (citing *Percival Construction Co. v. Miller & Miller Auctioneers* (10th Cir.1976) 532 F.2d 166). The purchase option under Kimco's agreements is 10 percent of the original cost of the leased property, which Kimco collects as a security deposit at the inception of the lease. At the termination of the lease, Kimco retains the security deposit and title automatically passes to the lessee, unless the lessee demands return of the security deposit. Kimco contends that almost all lessees exercise the

purchase option; however, this action has no probative effect on the critical question of the relation between consideration and market value at the time the purchase option is exercised. The record does not contain clear evidence of what the fair market value of the equipment would have been at the time the option was to be exercised. Therefore, the court cannot determine whether the option price would have been nominal as a matter of law.

■ The option to purchase is, however, only one of many relevant facts. *Morris*, 510 N.E.2d at 223 (citing *United Leaseshares*, 470 N.E.2d at 1387). Other relevant facts include the total amount of the lease payments, which party has equity in the property, the property's useful life, the nature of the lessor's business, and which party is responsible for the payment of taxes, insurance, and other expenses normally associated with ownership. *Morris*, 510 N.E.2d at 223–24 (citing *United Leaseshares*, 470 N.E.2d at 1387). Additionally, questions of risk of loss, liability upon default, and relation of option price to list price are relevant. *McEntire*, 471 N.E.2d at 1222 (citing *State Bank of Burleigh County Trust Co. v. All–American Sub, Inc.* (1980), N.D., 289 N.W.2d 772 and J. WHITE & R. SUMMERS, UNIFORM COMMERCIAL CODE § 22–3 (1980)).

■ The courts have established additional facts to consider when nominal consideration for the leased goods through the purchase option cannot be determined. These additional facts are important as they show the intent of the parties. When construing a contract, the intent of the parties as expressed by clear language in the contract provides the substance of the transaction. *McEntire*, 471 N.E.2d at 1221 (citing *Jenkins v. King* (1946) 224 Ind. 164, 65 N.E.2d 121). The evidence reveals Kimco's lessees bear the risk of loss and are responsible for the payment of taxes and insurance. These factors, however, have been held to merely indicate bargaining power and thus are not dispositive. *Mar-*

---

1. IC 26–1–1–201(37) was substantially revised in 1991. *See* P.L.1991–189 § 2. That revision, however, has no effect on the case at bar, which involves 1990 taxes.

*hoefer Packing Co.*, 674 F.2d at 1146. Kimco also presented evidence that the lease amounts were greater than the fair market value of the equipment, that payment of the security deposit established the lessees' equity in the equipment from the inception of the leases and that the useful life of the equipment was equal to the terms of the leases or a little longer. These facts indicate that the lease was intended as a security. The courts have not held these facts alone to be sufficient, however, without some proof of meeting the nominal consideration or "economic realities" tests. *See Morris*, 510 N.E.2d 221; *McEntire*, 471 N.E.2d 1216.

■■■ The "economic realities" test is a secondary test for the court's consideration which shows the relationship of the option price to the list price. *Morris*, 510 N.E.2d at 224, n. 3 (citing *McEntire*, 471 N.E.2d at 1222). The *McEntire* and *Morris* courts stated an option price less than 25 percent of the list price constituted evidence of a security agreement. *Id.; McEntire*, 471 N.E.2d at 1222. The "list price" is the stated purchase price in the lease. *See In re Wheatland Elec. Prod. Co.* (W.D.Penn 1964), 237 F.Supp. 820. Kimco's lease agreements, however, do not state a purchase price. Without the list price clearly shown in the lease agreement the court cannot determine whether the leases are truly security agreements or leases.

■■■ The lease states neither the fair market value of the equipment at the time of exercise of the purchase option, nor the list price. The presence of facts indicating ownership is not alone sufficient for a determination, as a matter of law, that the lease was intended as a security. Kimco has not presented sufficient evidence to show the State Board's determination is unsupported by substantial evidence or an abuse of discretion.

## B. CAPITAL v. OPERATING LEASES

When a lease is a capital lease, the lessee is primarily liable for the property taxes on the leased equipment and when the lease is an operating lease, the lessor is primarily liable for the property taxes. 50 IAC 4.2–

8–5. *See also Empire Gas of Rochester, Inc. v. State* (1985), Ind.App., 486 N.E.2d 1036. Kimco contends the leases are capital leases. The State Board's regulations provide that:

> (b) 'Capital leases' includes sales-type leases, direct financing leases, and leveraged leases. These leases *must meet one (1) or more of the following conditions to be so classified* and are or should be capitalized by the lessee for federal income tax purposes:
>
> > (1) Ownership of the property is transferred to the lessee at or before the end of the lease term.
> >
> > (2) The lease permits the lessee to purchase the property or renew the lease at a price or rental which is substantially less than the estimated market value or fair rental of the leased property at the time the option to purchase or renew the lease is exercised.
> >
> > (3) The lease term is equal to seventy-five percent (75%) or more of the estimated economic life of the leased property.
> >
> > (4) The present value of the minimum lease payments equals or exceeds ninety percent (90%) of the fair market value of the leased property at the inception of the lease.
>
> (c) 'Operating leases' includes all other leases.

50 IAC 4.2–8–2 (emphasis added).

The respective tax liabilities of lessors and lessees under capital and operating leases are expressly provided in the State Board's regulations:

> (a) The owner (lessor) of personal property covered by operating leases has the responsibility for reporting such property for assessment and taxation in the taxing district where the property was situated on the assessment date. This section does not relieve the person holding, possessing, or controlling personal property covered by operating leases of the responsibility to file a complete listing, on Form 103–N (50 IAC 4.2–2–9), of not owned personal property and the responsibility to pay such taxes if they

are not paid by the owner of the property as provided in 50 IAC 4.2-2-2.

(b) The person holding, possessing, or controlling (lessee) personal property covered by capital leases has the responsibility for reporting such property for assessment and taxation in the taxing district where the property was situated on the assessment date. This section does not relieve the owner (lessor) of the responsibility to file a complete listing, on Form 103-O (50 IAC 4.2-2-9), in the taxing district where the property was situated on the assessment date of all owned personal property which was in the possession of another person *nor does it relieve the owner of the tax liability if not paid by the lessee.*

50 IAC 4.2-8-5 (emphasis added). In *Empire Gas of Rochester*, 486 N.E.2d 1036, the court of appeals held the owner (lessor) of property under a capital lease was only secondarily liable for property taxes under 50 IAC 4.1-6-3, the predecessor to 50 IAC 4.2-8-5.

 The State Board determined that Kimco was the owner of the property throughout the lease term and that Kimco failed to provide adequate evidence to establish any of the four factors necessary for a capital lease. The State Board, therefore, determined Kimco's leases to be operating in nature. Under an operating lease, Kimco is primarily liable for the property tax. 50 I.A.C. 4.2-8-5. Notwithstanding the operating lease determination, a capital lease determination would leave Kimco secondarily liable for the property tax and require Kimco to carry the burden of proving the tax was actually paid in order to relieve itself of the tax burden. *See, e.g., State Bd. of Tax Comm'rs v. Jewell Grain Co.* (1990), Ind., 556 N.E.2d 920, 925.

Regardless of whether the lease is operating or capital, the parties to a lease involving property must file either a Form 103-O or Form 103-N. 50 IAC 4.2-8-3; 50 IAC 4.2-8-4. A Form 103-O is filed by the owner and is a complete listing of all of the owner's personal property not in the owner's possession on the assessment date in each taxing district where the property is located. 50 IAC 4.2-8-3(b); 50 IAC 4.2-8-4(c). A Form 103-N is filed by the lessee and is a complete listing of all not owned property in the possession of the lessee in each taxing district where the property is situated. 50 IAC 4.2-8-3(c); 50 IAC 4.2-8-4(b). Kimco is required to file Form 103-O. Form 103-O shows·

> the name and address of person(s) in possession, model, description, location, quantities, date of installation, and value per this article reported for assessment and taxation in order to provide a means of verification and cross reference by the assessing official(s) that all property is being properly reported for assessment and taxation.

50 IAC 4.2-2-5(b). The failure to file required personal property tax returns permits township assessors to assess personal property tax against the person owning, holding, possessing, or controlling the property. IND.CODE 6-1.1-3-15.

 The purpose of the filing requirement is to relieve the State Board of the burden of finding and identifying all the property in the state subject to taxation and to act as a verification and cross-reference showing that all property is being properly reported. *See, e.g., Jewell Grain Co.*, 556 N.E.2d at 925; 50 IAC 4.2-2-5(b). Kimco knows the location of the equipment as Kimco's lease provisions require the lessee to retain the equipment at the agreed location and not to remove the equipment without the written consent of the lessor, Kimco. Thus, Kimco should have filed a Form 103-O in each county containing its leased property.

 IC 6-1.1-2-4 is a tax levying statute, which must be construed against the State and in favor of the taxpayer, *Jewell Grain Co.*, 556 N.E.2d at 921 (citing *State Dep't of Revenue v. Estate of Eberbach* (1989), Ind., 535 N.E.2d 1194). In *Jewell Grain*, our supreme court held that IC 6-1.1-2-4 is unambiguous. *Id.* at 922. The court stated "under the ordinary meaning of the words chosen by the legislature, the Board has the discretion to tax either the owner or the possessor," and the stat-

ute does not clearly indicate any order of priority of taxation. *Id.* In *Bailey Seed Farms, Inc. v. State Board of Tax Commissioners* (1989), Ind.Tax, 542 N.E.2d 1389, this court held a possessor is not liable for tax if it establishes that the owner is being assessed and taxed. *Id.* at 1391. Since there is no priority between the possessor and owner for taxation, the reasoning in *Bailey Seed Farms* holds true that the filing of the appropriate form by Kimco along with evidence of subsequent assessment and taxation to the lessee would be sufficient to hold the lessee liable for the tax. *See Id.* Kimco did not, however, file Form 103–O or provide the court with evidence that the lessees were being assessed and taxed. The State Board therefore properly assessed personal property tax against Kimco.[2]

## CONCLUSION

For the reasons stated herein, the court AFFIRMS the State Board's final determination.

2. Kimco also contends that it was not afforded a credit for property leased to exempt organizations. IND.CODE 6–1.1–10–16 provides that:

(a) All or part of a building is exempt from property taxation if it is owned, occupied, *and* used by a person for educational, literary, scientific, religious, or charitable purposes.

. . . . .

(e) Personal property is exempt from taxation if it is *owned and used in such a manner*

*that it would be exempt under subsection (a)....*

I.C. 6–1.1–10–16 (emphasis added). The exemption applies only if an exempt organization owns the property in question. Kimco is the owner and is not an exempt organization, thus the exemption does not apply.