**MARIAH FOODS LP, Petitioner,**

v.

**INDIANA STATE BOARD OF TAX COMMISSIONERS,**
**Respondent.**

No. 49T10–9906–TA–152.

Tax Court of Indiana.

May 2, 2001.

Timothy J. Vrana, Sharpnack, Bigley, David & Rumple, Columbus, IN, Attorney for Petitioner.

Steve Carter, Attorney General of Indiana, Ted J. Holaday, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondent.

FISHER, J.

Petitioner Mariah Foods LP (Mariah) appeals the denial by the Indiana State Board of Tax Commissioners (State Board) of its applications for deduction from assessed value for new manufacturing equipment within an Economic Revitalization Area (ERA) for the March 1, 1997 and 1998 assessment dates. The issue presented is whether the State Board erroneously refused to approve the requested applications for deduction.

## FACTS AND PROCEDURAL HISTORY

As stipulated to by the parties, the relevant facts of this case follow:

On May 15, 1997, Mariah filed an Application For Deduction From Assessed Valuation, New Manufacturing Equipment In Economic Revitalization Area, to be effective March 1, 1997, for what it described as "new pork processing equipment." On May 8, 1998, Mariah filed an Application for Deduction From Assessed Valuation, New Manufacturing Equipment In Economic Revitalization Area, to be effective March 1, 1998, for what it again described as "new pork processing equipment." On December 29, 1998, the Board sent Mariah ( [via its Controller] Marvin Miller) a letter stating that all required information was not submitted and requesting the description, cost and installation dates of the equipment claimed to be eligible. On December 31, 1998, Mr. Miller responded to the State Board's request of December 29 by providing the information found in the Record of Administrative Proceeding at pages 79–89. On January 8, 1999, the Board sent another letter ... stating that a "detailed equipment list, with cost and installation dates for all items claimed for abatement" [for the March 1, 1997 assessment date] was re-

quired. Mariah failed to provide the information. Subsequently, on April 14, 1999, the Board sent Mariah notice that it intended to not allow any deduction [for 1998 or any prior year], but this notice allowed Mariah an additional three weeks to object and/or present any additional evidence that [was] pertinent to the application[s]. Again, Mariah did not provide the information that was required. Therefore, on May 6, 1999, the Board issued the final determination allowing no deduction.

(Stipulation, ¶ 2.)

Mariah filed an original tax appeal on June 18, 1999. The Court conducted a trial in this case on April 20, 2001, and thereafter took the matter under advisement. Additional facts will be supplied where necessary.

## ANALYSIS AND OPINION

### Standard of Review

 The Court gives great deference to the State Board's final determinations when the State Board acts within the scope of its authority. *Graybar Elec. Co. v. State Bd. of Tax Comm'rs*, 723 N.E.2d 491, 494 (Ind.Tax Ct.2000). Accordingly, this Court reverses final determinations of the State Board only when those decisions are unsupported by substantial evidence, are arbitrary or capricious, constitute an abuse of discretion, or exceed statutory authority. *Id.* The taxpayer bears the burden of demonstrating the invalidity of the State Board's final determination. *Clark v. State Bd. of Tax Comm'rs*, 694 N.E.2d 1230, 1233 (Ind.Tax Ct.1998).

### Discussion

 Mariah contends that the State Board abused its discretion or acted arbitrarily or capriciously in refusing to grant it the new manufacturing equipment de-

ductions for the assessment years in question. INDIANA CODE ANN. § 6–1.1–12.1–4.5 (West 2000) (amended by P.L. 4–2000, § 6) provides a deduction from the assessed value of new manufacturing equipment installed by a taxpayer. "The purpose of the ERA deduction is to encourage equipment installation and new employment opportunities in an area suffering from economic decline." *Knauf Fiber Glass v. State Bd. of Tax Comm'rs*, 629 N.E.2d 959, 962 (Ind.Tax Ct.1994). Each year, a taxpayer must file a certified deduction application with the State Board and with the auditor of the county in which the new manufacturing equipment is located. IND. CODE § 6–1.1–12.1–5.5(a) (amended by P.L. 4–2000, § 8). The deduction application must contain the following: (1) the name of the owner of the new manufacturing equipment; (2) a description of the new manufacturing equipment; (3) proof of the date the new manufacturing equipment was installed; and (4) the amount of the deduction claimed for the first year of the deduction. IND. CODE § 6–1.1–12.1–5.5(b). *See also* IND. ADMIN. CODE tit. 50, r. 4.2–11–4 (2001) (stating that certified deduction application shall be filed annually and contain a description of property "in sufficient detail to afford identification," a statement of the property's ownership, possession and use, the grounds for claiming the deduction, the full name and address of the applicant, and "[a]ny additional information which the state board may require by its prescribed form"). The State Board is charged with reviewing and verifying the correctness of each application and with notifying the county auditor that the deduction is approved or denied or that the amount of the deduction is altered. IND. CODE § 6–1.1–12.1–5.5(e). Taxpayers may appeal the State Board's final determination regarding a deduction application pursuant to INDIANA CODE § 6–1.1–12.1–5.5(h).

■ To prevail, Mariah was obligated to submit probative evidence sufficient to establish a prima facie case that the State Board abused its discretion or acted arbitrarily or capriciously in denying its deduction applications. *See Damon Corp. v. State Bd. of Tax Comm'rs,* 738 N.E.2d 1102, 1106 (Ind.Tax Ct.2000). A prima facie case is a case in which the evidence is sufficient to establish a given fact and if not contradicted will remain sufficient. *Id.* (citation and internal quotes omitted). "Indiana courts define abuse of discretion as an erroneous conclusion and judgment which is clearly against logic and the natural inferences to be drawn therefrom or a decision which contravenes reasonable[,] probable and actual deductions." *Palacios v. Kline,* 566 N.E.2d 573, 575 (Ind.Ct.App. 1991). *See also* BLACK'S LAW DICTIONARY 10 (7th ed. 1999) (defining "abuse of discretion" as "[a]n appellate court's standard for reviewing a decision that is asserted to be grossly unsound, unreasonable, or illegal"). Further, an "administrative order is arbitrary and capricious when it is without some basis which would lead a reasonable person to the same conclusion as the administrative agency." *Dawkins v. State Bd. of Tax Comm'rs,* 659 N.E.2d 706, 709 (Ind.Tax Ct.1995). *See also State Bd. of Tax Comm'rs v. South Shore Marina,* 422 N.E.2d 723, 727 (Ind.Ct.App.1981) (defining an "arbitrary or capricious act" in part to be "one which is willful and unreasonable, without consideration and in disregard of facts or circumstances in the case").

■ On both its 1997 and 1998 deduction applications, Mariah described the equipment for which it was seeking deductions simply as "new pork processing equipment." (R. of Admin. Proceedings at 14, 26.) Both applications indicate that

Mariah installed the new equipment on October 15, 1996, and that the equipment had a cost of $565,412. (R. of Admin. Proceedings at 14, 26.) The label "new pork processing equipment" is a broad, general description. The State Board reasonably could have concluded that this description lacked sufficient detail to properly identify the new equipment.[1]

In response to this lack of specificity, the State Board gave Mariah multiple opportunities over approximately a four-month period to provide the requested information. First, on December 29, 1998, the State Board sent Mariah a letter stating that the State Board needed the "description, cost and installation dates of equipment claimed" for the March 1, 1998 assessment date. (R. of Admin. Proceedings at 25.) This letter instructed Mariah that it had until January 12, 1999 to provide this information. Furthermore, the letter contained the State Board's address and phone number; it instructed Mariah to mail the requested information to the attention of the State Board's Brenda Harris and told Mariah to "direct any questions to the above telephone number." (R. of Admin. Proceedings at 25.) In response to this letter, Mariah on December 31, 1998, gave the State Board copies of the following items: (1) 1997 deduction application; (2) Compliance with Statement of Benefits Form, filed February 28, 1997; (3) 1996 Business Tangible Personal Property Assessment Return; (4) 1996 Real Estate Tax Statement; and (5) a certified copy of the resolution by the Common Council of the City of Columbus, adopting Mariah's Statement of Benefits and authorizing the new manufacturing equipment deduction. (R. of Admin. Proceedings at 79–89.) At trial, Mariah's counsel asserted that the information provided was not "the

---

1. The Court does not decide whether the installation date and cost figure found on the face of each deduction application were inadequate.

things that the State Board needed." (Trial Tr. at 6.) None of these items mentioned, identified or described the new equipment with any specificity.

Second, on January 8, 1999, Brenda Harris faxed Mr. Miller, Mariah's Controller, a memo stating that that State Board had received Mariah's 1997 deduction application. To review the deduction, Harris indicated that the State Board needed a "Detailed equipment list, with cost and installation dates for all items claimed for abatement." (R. of Admin. Proceedings at 47.) She also requested Mariah's 1996 and 1997 Business Personal Property Tax Returns. Harris ended the memo stating "If you have any questions, please call me." (R. of Admin. Proceedings at 47.)

Third, the State Board mailed Mariah another letter, dated April 14, 1999. This letter served as a recommendation with respect to the requested new manufacturing equipment deductions. The letter stated that for both the 1998 application and for the prior year's application, the State Board intended to approve no deductions for Mariah. (R. of Admin. Proceedings at 48.) In addition, the letter informed Mariah that the State Board was giving it three weeks to "contact this office and question the enclosed recommended changes, voice objections, and/or present any additional evidence which is pertinent to your application." (R. of Admin. Proceedings at 48.) The recommendation letter further explained that the State Board did not grant the deductions because it "did not receive [the] requested information necessary to approve [the] deduction[s]." (R. of Admin. Proceedings at 48.)

Mariah did not respond to the State Board's communications of January 8 and April 14, 1999. The State Board's final determination followed on May 6, 1999. At no time prior to the State Board's final determination did Mariah provide the State Board with a detailed list of the new manufacturing equipment. The State Board is charged with reviewing and verifying the correctness of each deduction application. IND. CODE § 6–1.1–12.1–5.5(e). The State Board could not be expected to identify the new manufacturing equipment claimed to be eligible for the deductions without a detailed list of the new equipment. Mariah's inaction, not the State Board's actions, was the problem, especially where the State Board gave Mariah several opportunities to submit the information and encouraged Mariah to contact the State Board with questions it might have had about the requests for information. As the business applying for the deductions, Mariah was obligated (and, indeed, was in the best position) to provide the information requested by the State Board. Without this information having been made available to it, the State Board reasonably concluded that Mariah's deduction applications could not be approved.[2] See Hi–Temp, Inc. of Decatur County v. State Bd. of Tax Comm'rs, 645 N.E.2d 680, 682 (Ind.Tax Ct.1995) (observing that, where taxpayer failed to file a deduction application, State Board "lacked the information necessary to calculate the amount of [taxpayer's] deduction").

Mariah offered no probative evidence showing that the State Board's decision not to grant the requested deductions was erroneous. Thus, it has not established a

---

**2.** Mariah claims that, since the State Board's final determination, it "has attempted to provide the necessary information to the State Board." (Trial Tr. at 3.) Regardless of the relevance of the information Mariah has offered to supply the State Board subsequent to the final determination, the State Board did not possess the information at the time the information was needed. In short, Mariah's post-final determination efforts have been too little, too late.

prima facie case as to its claim. The Court holds that the State Board neither abused its discretion nor acted in an arbitrary or capricious manner in disapproving Mariah's deduction applications.

## CONCLUSION

For the above reasons, the State Board's final determination is AFFIRMED.