# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 14 2017, 8:35 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Robert J. Gabrielse
Law Office of Robert J. Gabrielse
DeMotte, Indiana

F. Joseph Jaskowiak
Lauren K. Kroeger
Hoeppner Wagner & Evans LLP
Merrillville, Indiana

ATTORNEYS FOR
APPELLEE/CROSS-APPELLANT,
BMW CONSTRUCTORS, INC.

Anthony R. Jost
Laura S. Reed
James O. Giffin
Riley Bennett Egloff LLP
Indianapolis, Indiana

ATTORNEYS FOR
APPELLEE/CROSS-APPELLEE,
NORTHERN INDIANA PUBLIC
SERVICE COMPANY

Brent E. Inabnit
Nicholas J. Derda
Sopko, Nussbaum, Inabnit &
Kaczmarek
South Bend, Indiana

ATTORNEY FOR APPELLEE/CROSS-
APPELLEE, PEKRON CONSULTING,
INC.

Scott B. Cockrum
Schererville, Indiana

ATTORNEY FOR CROSS-APPELLEE,
ATLANTIC PLANT SERVICES, LLC

David W. Pera
Buoscio, Pera & Kramer
Merrillville, Indiana

ATTORNEYS FOR CROSS-APPELLEE, AREA SHEET METAL, INC.

Daniel W. Glavin
Kathleen M. Erickson
Schererville, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Julie A. Jabaay, Individually and as Personal Representative of the Estate of Troy Allen Jabaay, Deceased,

*Appellant/Plaintiff,*

v.

BMW Constructors, Inc.,

*Appellee/Cross-Appellant/Defendant,*

Northern Indiana Public Service Company, Atlantic Plant Services, LLC, Area Sheet Metal, Inc. and Pekron Consulting, Inc.,

*Appellees/Cross-Appellees/Defendants*

June 14, 2017

Court of Appeals Case No. 45A05-1608-CT-1768

Appeal from the Lake Superior Court

The Honorable John M. Sedia, Judge

Trial Court Cause No. 45D01-1401-CT-34

**May, Judge.**

Julie A. Jabaay, individually and as Personal Representative of the Estate of Troy Allen Jabaay ("Jabaay Estate")[1] appeals the trial court's grant of summary judgment in favor of BMW Constructors, Inc. ("BMW") and Northern Indiana Public Service Company ("NIPSCO").[2] We affirm.[3]

# Facts and Procedural History

On December 1, 2012, the NIPSCO Schahfer Generating Station ("Station") in Wheatfield, Indiana, was damaged following an explosion. Pursuant to existing service agreements, NIPSCO contacted various independent contractors to conduct repairs to the Station. Those independent contractors included BMW and Safway Services, LLC ("Safway").

Safway was hired to construct and maintain scaffolds. On December 1 and December 2, 2012, a crew from Safway erected scaffolding on the east ("East Scaffold"), west ("West Scaffold"), and south sides of the Station. Troy Jabaay ("Troy") was a seasoned union carpenter and had been building scaffolding for approximately fifteen years. Because of his extensive experience, Safway had selected him to be a "Competent Person" in 1997. (Appellant's App. Vol. V at 183.) Troy had to complete training and take a certification exam to become a

---

[1] We deny the Jabaay Estate's request for oral argument via order issued contemporaneous with this opinion.

[2] The Jabaay Estate does not challenge the trial court's grant of summary judgment in favor of Atlantic Plant Services, LLC ("Atlantic"); Area Sheet Metal, Inc. ("ASM"); and Pekron Consulting, Inc. ("Pekron").

[3] Because we affirm, we need not address BMW's cross-appeal arguments regarding liability in the event we were to reverse the trial court's decision.

Competent Person. As a Safway Competent Person, Troy had "a responsibility to make decisions about what is safe and not safe with respect to scaffolds[.]" (Appellant's App. Vol. IV at 97-8.)

[4] Between 6:00 a.m. and 7:00 a.m. on December 4, 2012, Troy inspected the West Scaffold at the Station as part of his duties. He initialed a yellow tag attached to the West Scaffold indicating he had completed a safety inspection and the West Scaffold was safe to use. After he completed these inspections, Troy met with Dick Caldwell, the BMW day shift supervisor, who gave Troy a note written by John Ceglarek, the BMW night shift supervisor, indicating work done by BMW the night before. The hand-written note stated:

> 12-3-12 Nights
>
> Dick
>     We got the old duct out from top of channel. Started cleaning top flgs of channel box. Nipsco had us down for about 1 ½ hours when starting C mill up.
>     We had to remove most of top scaffolding to get duct out.
>     You will need to have it put back to work on exp. joint flg.
>
>                                         Have a good day
>                                         John
>
> P.S. Dick, we cut one up right on south west scaffold to get bottom out. We remove =HANDRAIL= on channel level. This needs to redone before using scaffolding.

(Appellant's App. Vol. V at 156) (errors in original). Caldwell testified during a deposition he let Troy

know that I wasn't real sure, but I thought that if they did anything, it would have been to the east side because that's the side the piece was going to come out. So I basically just apologized to Troy saying that I didn't know what was going on with this note, and if he could make more sense of it with the note. Normally, I would just tell him, but me not understanding this note, I give it to him to see if he could - - you know if it made more sense to him.

(Appellant's App. Vol. III at 75) (errors in original). Caldwell also testified Troy told Caldwell that Troy would "take care of it." (BMW App. Vol. II at 103.)

[5] Troy then alerted his crew and asked them to accompany him to the West Scaffold. Troy climbed up the ladder to the West Scaffold. He was not wearing a harness, which was required to maintain three points of contact for safety reasons. Troy stepped off the ladder onto the handrail, which came loose at one end. The handrail, with Troy on it, swung out from the end still affixed to the West Scaffold. Troy fell thirty feet and died from his injuries.

[6] After the incident, the Indiana Occupational Safety and Health Administration ("IOSHA") investigated. IOSHA concluded Troy breached his duty as Safway's Competent Person to thoroughly and properly inspect the scaffolding, and his failure to do so caused the incident that resulted in his death. Based on their investigation, IOSHA cited Safway with a serious violation of 29 CFR § 1926.20(b)(2), indicating Safway

did not provide for frequent and regular inspections of the jobsite and equipment by a competent person[, specifically] . . . On or

about, December 04, 2012: The employers [sic] designated competent person, on the site, failed to identify existing and predictable hazards and/or take the necessary measures to alleviate the hazards of scaffolding.

(BMW App. Vol. III at 124.) Safway filed an appeal of IOSHA's decision, arguing it was not responsible for the incident because Troy's actions constituted employee misconduct. On February 17, 2014, IOSHA dismissed the citation against Safway based on Safway's defense of employee misconduct.

[7] On April 22, 2013, the Jabaay Estate filed a civil complaint against BMW alleging negligence. BMW filed a response naming NIPSCO, Atlantic, Safway, and Troy as liable non-parties. On August 22, 2013, the Jabaay Estate amended its complaint to include NIPSCO and Atlantic. BMW filed a response naming ASM and Pekron as additional non-parties. On October 21, 2014, the Jabaay Estate again amended its complaint to include ASM and Pekron as non-parties. All defendants separately filed motions for summary judgment between May 2015 and March 2016. On April 25, 2016, the Jabaay Estate filed a reply to NIPSCO and BMW's motions for summary judgment. Additionally, on April 25, 2016, BMW filed a response to its co-defendants' motions for summary judgment arguing all defendants were entitled to summary judgment or none of them were, and preserving the right to name any co-defendants dismissed from the action as liable non-parties.

[8]    The trial court heard argument on the parties' respective motions for summary judgment on June 30, 2016, and July 13, 2016. On July 15, 2016, the trial court granted summary judgment in favor of all defendants.

# Discussion and Decision

[9]    Our standard of review for summary judgment is well-established:

> We review summary judgment *de novo*, applying the same standard as the trial court: "Drawing all reasonable inferences in favor of . . . the non-moving parties, summary judgment is appropriate 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009) (quoting T.R. 56(C)). "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (internal citations omitted).

> The initial burden is on the summary-judgment movant to "demonstrate the absence of any genuine issue of fact as to a determinative issue," at which point the burden shifts to the non-movant to "come forward with contrary evidence" showing an issue for the trier of fact. *Id.* at 761-62 (internal quotation marks and substitution omitted). And "[a]lthough the non-moving party has the burden on appeal of persuading us that the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that he was not improperly denied his day in court." *McSwane v. Bloomington Hosp. & Healthcare Sys.*, 916 N.E.2d 906, 909-10 (Ind. 2009) (internal quotation marks omitted).

*Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). Therefore, for the trial court to properly grant summary judgment, the movants must have "made a *prima facie* showing that their designated evidence negated an element of the nonmovants' claims, and, in response, the nonmovants must have failed to designate evidence to establish a genuine issue of material fact." *Cox v. Mayerstein–Burnell Co., Inc.*, 19 N.E.3d 799, 804 (Ind. Ct. App. 2014). We will affirm a trial court's decision on summary judgment if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. *United Rural Elec. Membership Corp. v. Ind. Mich. Power Co.*, 648 N.E.2d 1194, 1196 (Ind. Ct. App. 1995), *trans. denied*. Summary judgment is rarely appropriate in negligence actions. *McCormick v. State*, 673 N.E.2d 829, 832 (Ind. Ct. App. 1996).

[10] The tort of negligence is composed of three elements: "(1) a duty owed by the defendant to conform its conduct to a standard of care necessitated by its relationship with the [plaintiff]; (2) a breach of that duty; and (3) an injury proximately caused by the breach." *Id.* at 837. Here, we find the issue of the proximate cause of Troy's injury to be dispositive.

[11] It is well-established:

> The Comparative Fault Act created a modified comparative fault scheme in which "any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages...." Ind. Code § 34-51-2-5. In addition, "the claimant is barred from recovery if the claimant's contributory fault is greater than the fault of all persons whose

fault proximately contributed to the claimant's damages." Ind. Code § 34-51-2-6. For purposes of comparative fault, the term "fault" includes "any act or omission that is negligent, willful, wanton, reckless, or intentional toward the person or property of others. The term also includes unreasonable assumption of risk not constituting an enforceable express consent, incurred risk, and unreasonable failure to avoid an injury or to mitigate damages." Ind. Code § 34-6-2-45(b) . . . Thus, one's fault can include an act or omission occurring either before or after the fault of another.

*Hopper v. Carey*, 716 N.E.2d 566, 575 (Ind. Ct. App. 1999), *trans. denied* (emphasis omitted). "The Comparative Fault Act entrusts the allocation of fault to the sound judgment of the fact-finder." *Paragon Family Restaurant v. Bartolini*, 799 N.E.2d 1048, 1056 (Ind. 2003). However, "at some point the apportionment of fault may become a question of law for the court. But that point is reached only when there is no dispute in the evidence and the factfinder is able to come to only one logical conclusion." *Robbins v. McCarthy*, 581 N.E.2d 929, 934 (Ind. Ct. App. 1991), *reh'g denied*, *trans. denied*.

[12] While there are multiple versions of what occurred in the days leading up to Troy's fall, there is no dispute regarding what happened between the time Troy inspected the scaffolding and the time he fell to his death. The trial court found:

Between the hours of six o'clock and seven o'clock a.m. on the morning of December 4, 2012, Troy Allen Jabaay, employed as a foreman by Safway, inspected the west scaffold located at the Unit 15B Mill that had been built two days earlier by Safway and initialed an inspection tag indicating that it was safe for use for

all contractors during the day shift. Later that day, Troy climbed the west scaffold and grabbed a horizontal scaffold bar. The scaffold bar became dislodged and caused him to tragically fall some thirty feet to his death.

* * * * *

None of the parties have come forward with any evidence that any of the defendants did anything to negligently modify the scaffolding on the west scaffold after Troy's inspection, which did not identify any loose handrails and determined that the scaffold was safe for use, that would establish the existence of a genuine issue of material fact sufficient to preclude summary judgment.

(Appellant's App. Vol. II at 37, 42.)

[13] The Jabaay Estate argues the trial court's focus on the time between Troy's inspection and Troy's fall is an error, and that we should instead consider their arguments regarding alleged duties undertaken by NIPSCO and BMW either gratuitously or by contract. They also argue there are genuine issues of material fact whether Troy adhered to certain safety regulations and whether those regulations were applicable to the situation. None of that is of consequence, as Troy's actions caused his death.

[14] When Troy inspected the scaffold between 6:00 a.m. and 7:00 a.m. on December 4, 2012, he initialed the yellow safety tag, indicating he had inspected the scaffold. (*See* BMW Conf. App. Vol. II at 84) (testimony regarding inspection process). Troy was a Competent Person for Safway, which required him to complete training and pass a certification exam.

Through this designation, he had "a responsibility to make decisions about what is safe and not safe with respect to scaffolds[.]" (Appellant's App. Vol. IV at 97-8.) Simply put, as a Competent Person, Troy himself had a duty to ensure the scaffolds were safe that day.

[15] There is no evidence anyone accessed the scaffolding between Troy's inspection and Troy's fall. Therefore, the only explanation for the unsafe condition which caused Troy's death, the loose bar on the West Scaffold, is Troy's negligent or incomplete safety inspection. We need not examine the actions of other parties prior to that inspection, because even if their actions were negligent, those negligent actions were not the proximate cause of Troy's death, which occurred after Troy declared the scaffold safe for use. *See McKinney v. Public Service Co. of Indiana, Inc.*, 597 N.E.2d 1001, 1005 (Ind. Ct. App. 1992) ("A negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated, regardless of whether the earlier negligence concurs with other proximate causes of injury[.]"), *reh'g denied*, *trans. denied*. As the undisputed evidence negates the possibility that any other defendant could have been the proximate cause of Troy's injury, the Jabaay Estate cannot be successful in its negligence action.

# Conclusion

As Troy's negligence in inspecting the scaffold was the proximate cause of his death, the trial court did not err as a matter of law when it granted summary judgment in favor of NIPSCO and BMW. Accordingly, we affirm.

Affirmed.

Najam, J., and Bailey, J., concur.